**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
----------------------------------------------------------X
MICHAEL P. REED and LISA A. REED

     Plaintiffs,

  -against-

MEDFORD FIRE DEPARTMENT, INC.,
BOARD OF FIRE COMISSIONERS OF THE
MEDFORD FIRE DISTRICT, MEDFORD,
NEW YORK, FRANKLIN RIVERA, HENRY
PINTO, JOHN DOE1, JOHN DOE2, JOHN
DOE3 and JANE DOE,

     Defendants.
----------------------------------------------------------X

       **MEMORANDUM OF**
       **DECISION AND ORDER**
       10-CV-737 (ADS) (AKT)

**APPEARANCES:**

**Joseph C. Stroble, Esq.**
*Attorney for the Plaintiffs*
40 Main Street
Sayville, NY 11782

**Furey & Furey, PC**
*Attorneys for the Defendants*
600 Front Street
Hempstead, NY 11550
   By: Frank Catelli, Esq.
     Ingrid Mercedes Rodriguez, Esq., Of Counsel

**SPATT, District Judge.**

   Michael Reed and Lisa Reed commenced this action against the Medford Fire Department,

Inc. ("the Department"), the Board of Fire Commissioners of the Medford Fire District ("the Board

of Fire Commissioners"), Franklin Rivera, Henry Pinto, and unspecified members of the

Department ("the Defendants") to recover damages associated with Michael Reed's discharge from

his position as a volunteer firefighter with the Department. In addition, they are seeking damages

associated with Michael Reed's request for records associated with his termination. Presently

before the Court is the Defendants' motion for summary judgment pursuant to Federal Rule of Civil Procedure 56 ("Fed. R. Civ. P. 56") to dismiss the complaint in its entirety. For the reasons set forth below, the Court grants in part and denies in part the Defendants' motion.

## I. BACKGROUND

The following constitute the undisputed facts in the case, with exceptions noted. As an initial matter, the Court notes that while both Michael Reed and Lisa Reed are plaintiffs in this action, most of the facts and causes of action relate solely to Michael Reed. Therefore, unless otherwise stated, all references to "Reed" or "the Plaintiff" are intended to refer to Michael Reed.

On February 3, 2008, Michael Reed, a volunteer member Medford Fire Department attended a Super Bowl party at the firehouse. On or about February 8, 2008, the Department received a letter from Kathleen Zaugg, the wife of a fellow volunteer firefighter, accusing Reed of inappropriately touching her at the Super Bowl party and requesting disciplinary action against him. In response to Zaugg's allegation, on February 17, 2008, the Department conducted an interview of Reed. In attendance at this interview were Reed, Chief Franklin Rivera, First Assistant Chief Norman Melcher, and Second Assistant Chief William Wyche. According to the Defendants, at this meeting Reed admitted to Zaugg's allegations of inappropriate conduct. However, Reed denies the allegations and denies making any admissions at the February 17, 2008 meeting.

On February 20, 2008, Rivera sent Reed a letter advising him that he was suspended from the Department until the next general meeting, which was to be held on March 7, 2008, for violating the Department's sexual harassment policy. The Department's sexual harassment policy is set forth in Article IV Section 3 Subdivision (A) of the Department's by-laws, which states that "conduct unbecoming of a member of the department in public" would be met with disciplinary action or expulsion. (Rodriguez Aff., Ex. E.) Rivera also sent a letter to Henry Pinto, president of the

Department, recommending that the Department terminate Reed as a volunteer firefighter. In addition, on or about February 29, 2008, the Board of Fire Commissioners received correspondence from the law firm of Cartier, Bernstein, Auerbach, and Dazzo P.C., advising them that they had been retained by Zaugg in connection with the alleged groping incident.

On March 7, 2008, William Morrissey, Esq. ("Morrissey"), attorney for the Department, sent Reed a "Notice of Charges and Disciplinary Hearing" advising him that a hearing would be held pursuant to New York General Municipal Law § 209-l ("GML § 209-l") and the Department by-laws on March 26, 2008 at 8:00am in order to address the charges against him. However, at the Department's general meeting on March 7, 2008, the Department membership voted to withdraw the notice of the hearing and found Reed guilty of the charges. As reflected in the minutes of the March 7, 2008 Hearing ("March 7, 2008 Minutes"), the Department membership concluded that Reed was guilty because: (1) he had been given adequate notice of the March 7, 2008 meeting but failed to appear; (2) he had failed to request a trial; and (3) allegedly he admitted the charges against him at the February 17, 2008 interview. (Rodriguez Aff., Ex. I.) After the members voted that Reed was guilty, the Department's executive committee voted to terminate Reed from the Department. The next day, on March 8, 2008, on behalf of the Department, Morrissey sent a letter to Reed advising him that the executive committee had voted to remove him from the Department based on his violation of the Department's sexual harassment policy.

Not having been present at the March 7, 2008 Hearing, Reed attempted to obtain a copy of the minutes of the meeting. On April 5, 2008 Reed called Jim Guerrasio, who he believed was the president of the Department, to request a copy of the minutes. In addition, Reed sent a follow up written request for the minutes to Guerrassio on April 10, 2008. In response, Pinto, the actual president of the Department, sent a letter to Reed advising him that "all requests for monthly

minutes must be requested through [his] lawyer" and that they would "wait for [his] lawyer's notification". (Stroble Aff., Ex. C.) Reed contends that at this point he retained a lawyer, Joseph Stroble, Esq. ("Stroble"), who then assisted him with filing a request for the March 7, 2008 Minutes with the Board of Fire Commissioners pursuant to New York's Freedom of Information Law ("FOIL"). On June 16, 2008, the Medford Fire District's Freedom of Information Officer Michelle Roston ("Roston") sent a letter to Stroble requesting additional information in order to comply with the request.

The record does not indicate whether Reed or Stroble responded to Roston's request for additional information. However, on or about June 19, 2008, Reed filed a petition pursuant to Article 78 of the New York Civil Practice Law and Rules challenging his termination as arbitrary and contrary to law because he was not provided with a hearing in accordance with the Department by-laws and GML §209-l (the "Article 78 Petition"). The Article 78 Petition also charged that the Defendants had violated FOIL by denying his request for a copy of the March 7, 2008 Minutes, and requested an order directing the Board of Fire Commissioners and the Department to produce the March 7, 2008 Minutes at their own cost, and to pay Reed's attorneys' fees in association with the request. The portion of the Department's response to the Article 78 Petition annexed to the Affidavit of Joseph Stroble in Opposition to the Motion for Summary Judgment ("Stroble Affidavit"), indicates that the Department attached a copy of the March 7, 2008 Minutes to its response to the Article 78 Petition.

On October 5, 2009, New York Supreme Court Justice Joseph Farneti granted the Article 78 Petition. In his decision, Justice Farneti rejected the Department's argument that Reed was not entitled to a hearing because he was discharged for a violation of the Department's by-laws, which is not governed by the municipal law. Instead, Justice Farneti held that the basis for removal was

Reed's misconduct, which is governed by the municipal law.  In particular, GML § 209-l provides in relevant part that:

> 3.    Removals on the ground of incompetence or misconduct, except for absenteeism at fires or meetings, shall be made only after a hearing upon due notice and upon stated charges . . . .
>
> . . . .
>
> 4. a. Hearings upon such charges shall be held by the officer or body having the power to remove the person charged with incompetency or misconduct or by a deputy or employee of such officer, or body designated in writing for that purpose. . . .
>
> b. The notice of such hearing shall specify the time and place of such hearing and state the body or person before whom the hearing will be held.
>
> c. Such notice and a copy of such charges shall be served personally upon the accused officer or member at least ten days but not more than thirty days before the date of the hearing.

N.Y. Gen. Mun. Law § 209-l (McKinney 2011).  However, Justice Farneti also stated that, even assuming *arguendo* that Reed's removal was governed by the Department by-laws, the by-laws also required notice and a hearing.  See By-Laws of the Medford Fire Department Article IV Section 6 ("Any member facing charges shall be notified in writing at least 15 calendar days before such trial.") (Rodriguez Aff., Ex. J at 7).  Thus, Justice Farneti ordered the Department to "conduct a hearing with respect to the allegations which served as the basis for petitioner's removal, in compliance with General Municipal Law section 209-l  and Section 4 of the Fire Department's by-laws, within sixty (60) days" of service of the order.  Reed v. Medford Fire Dep't, Inc. ("Reed I"), Index No. 19931/2008, at 5 (N.Y. Sup. Ct. Suffolk Cnty. Oct. 5, 2009).  With respect to the FOIL claims, Judge Farneti held that because  the Department had provided Reed with the March 7, 2008 Minutes in response to the Article 78 Petition, his FOIL claim was moot.  Id. at 3.  The decision does not address Reed's request for attorneys fees or other damages associated with his FOIL request.  Reed did not appeal from this decision.

In accordance with Judge Farneti's order in <u>Reed I</u>, on November 20, 2009, on behalf of the Department, Morrissey sent to Stroble, Reed's attorney, who had represented Reed in conjunction with his FOIL request and his Article 78 Petition, a "Notice of Charges and Disciplinary Hearing" ("the Notice") via certified and regular mail stating that Reed's hearing would take place on December 9, 2009. However, contrary to the requirements of GML § 209-l, the Defendants did not personally serve Reed. The record is silent as to whether the Defendants mailed a copy of the Notice to Reed. Although Stroble admits to receiving notice of the hearing, he contends that he did not inform Reed of the hearing because he was not certain he was still representing him.

Prior to the hearing, Morrissey contacted Stroble with an offer to have an independent hearing officer preside over the hearing in lieu of the President of the Department. On December 8, 2009, Stroble left a voicemail for Morrissey stating that he did not have the authority to consent to an independent hearing officer. Morrissey then sent a follow up letter to Stroble on December 9, 2009 confirming the content of the voicemail, stating that the hearing that evening would be conducted in accordance with the Department's by-laws, and inviting Stroble to contact him if he wanted to discuss the matter further. (Rodriguez Aff., Ex. O.) The parties dispute whether Stroble's voicemail was an indication that he had discussed the offer with Reed.

Nevertheless, it is undisputed that, when the Department held the hearing on December 9, 2009, neither Reed nor Stroble were in attendance. Although the parties dispute whether the December 9, 2009 meeting met the definition of a "hearing", for the purposes of this motion only, the Court will refer to the December 9, 2009 meeting as the "December 9, 2009 Hearing". At the December 9, 2009 Hearing, Morrissey informed the voting members that they were entitled to find Reed guilty under the by-laws based on his failure to appear, and presented the evidence that he alleged indicated that Reed had notice of the hearing. In particular, Morrissey stated that Article 4

Section 6 of the Department's by-laws provide that "Any member facing charges shall be notified of the charges in writing at least two weeks before such trial. If the accused willfully neglects or refuses to stand trial he shall be deemed guilty." (Rodriguez Aff., Ex. J at 7.)

In addition, although noting that it was not required, Morrissey also presented exhibits and evidence purporting to establish Reed's guilt. The members attending the meeting then voted thirty-five to zero that Reed was guilty of the charges. The executive committee, which did not include either Rivera or Pinto, then met and voted to continue with Reed's existing termination based on the evidence presented and Reed's failure to appear. On December 10, 2009, Morrissey sent a letter to Stroble advising him that Reed had again been dismissed from the Department.

As a result, on February 19, 2010, Reed and his wife Lisa Reed commenced the instant action by filing a complaint against the Department, the Board of Fire Commissioners, Rivera, Pinto, and three John Does, and one Jane Doe who were allegedly involved in formulating or implanting the policies that resulted in his termination. Although it will be addressed more fully in the discussion, the complaint in this action was not a model of clarity. There is little to no differentiation between the various defendants as to what conduct is being attributed to them or what causes of action are being asserted against them.

Viewing the complaint in the light most favorable to the plaintiffs, the Court construes the complaint as asserting that: (1) the Department deprived Reed of his First Amendment, Eighth Amendment, and Fourteenth Amendment rights in violation of 42 U.S.C. §1983 and state civil rights laws in association with the December 9, 2009 Hearing; (2) all of the Defendants intentionally and/or negligently caused Reed severe emotional distress and pecuniary loss based on their conduct associated with both the March 7, 2008 Hearing and the December 9, 2009 Hearing; (3) all of the Defendants are either vicariously or directly liable for committing libel and slander

7

against Reed based on Rivera's statements at the March 7, 2008 Hearing that Reed was guilty of the charges; (4) Lisa Reed is entitled to damages for loss of consortium; and (5) all of the Defendants violated the federal Freedom of Information Act, 5 U.S.C. § 552, and the New York Freedom of Information Law.

On December 29, 2010, the Defendants moved for summary judgment pursuant to Fed. R. Civ. P. 56, seeking the dismissal of the entire complaint. The Defendants first assert that the state common law tort claims fail because: (1) Reed did not file the requisite Notice of Claim pursuant to General Municipal Law § 50-e to sustain claims for intentional and negligent infliction of emotional distress, libel, and slander; (2) Reed admitted in his Rule 56.1 Statement of Facts that the statute of limitations on the libel and slander claims has expired; and (3) Lisa Reed's loss of consortium claim is derivative of the unsustainable state common law tort claims and Section 1983 does not permit derivative loss of consortium claims. Next, the Defendants contend that they are entitled to summary judgment on Reed's FOIA and FOIL claims because: (1) the FOIL claim is barred by *res judicata* pursuant to the decision in <u>Reed I</u>; and (2) Reed cannot state a claim under FOIA. Finally, with respect to the Section 1983 claims, the Defendants contend that they are entitled to summary judgment because: (1) Rivera or Pinto cannot be held personally liable under Section 1983 because they did not participate in the decision to terminate Reed at the December 9, 2009 Hearing; and (2) Reed's Section 1983 due process claim fails as a matter of law because he had an adequate post-termination remedy in the form of an Article 78 proceeding.

For his part, Reed contends that there are genuine issues of material fact as to: (1) whether the Defendants violated FOIA and FOIL by requiring the Plaintiff to have an attorney before the Department could respond to his request for the March 7, 2008 Minutes; (2) whether the December 9, 2009 Hearing complied with Justice Farneti's order in <u>Reed I</u> and satisfied the constitutional

requirement for a pre-termination "hearing"; and (3) whether the decision to terminate him was arbitrary, an abuse of discretion, and disproportionate to the alleged misconduct.

## II. DISCUSSION

### A.  Legal Standard

It is well-settled that summary judgment under Fed. R. Civ. P. 56(c) is proper only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  A fact is "material" within the meaning of Fed. R. Civ. P. 56 when its resolution "might affect the outcome of the suit under the governing law."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986).  An issue is "genuine" when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  Id.  In determining whether an issue is genuine, "[t]he inferences to be drawn from the underlying affidavits, exhibits, interrogatory answers, and depositions must be viewed in the light most favorable to the party opposing the motion."  Cronin v. Aetna Life Ins. Co., 46 F.3d 196, 202 (2d Cir. 1995) (citing United States v. Diebold, Inc., 369 U.S. 654, 655, 82 S. Ct. 993, 8 L. Ed. 2d 176 (1962) (per curiam), and Ramseur v. Chase Manhattan Bank, 865 F.2d 460, 465 (2d Cir. 1989)).

Once the moving party has met its burden, "the nonmoving party must come forward with 'specific facts showing that there is a genuine issue for trial.'"  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986) (quoting Fed. R. Civ. P. 56(e)). However, the nonmoving party cannot survive summary judgment by casting mere "metaphysical doubt" upon the evidence produced by the moving party.  Matsushita, 475 U.S. at 586, 106 S. Ct. 1348.  Summary judgment is appropriate when the moving party can show that

"little or no evidence may be found in support of the nonmoving party's case." <u>Gallo v. Prudential Residential Servs.</u>, 22 F.3d 1219, 1223–24 (2d Cir. 1994) (citations omitted).

 **B.  As to Plaintiff's State Law Tort Claims**

Michael Reed asserts various state law tort claims in his complaint, including intentional and negligent infliction of emotional distress, libel, and slander.  In addition, plaintiff Lisa Reed asserts a claim for loss of consortium based on the underlying torts.  However, despite the fact that these claims are included in the complaint, and were addressed by the Defendants in their summary judgment motion, the Plaintiff did not put forth any argument or evidence as to the existence of a genuine issue of material fact precluding the dismissal of these claims.

If the adverse party does not respond to the summary judgment motion, "summary judgment, if appropriate, shall be entered against the adverse party." Fed. R. Civ. P. 56(e).  That the Plaintiff did not respond to the motion for summary judgment with respect to the state law tort claims does not mean the motion is automatically granted.  Rather, "[s]uch a motion may properly be granted only if the facts as to which there is no genuine dispute 'show that the moving party is entitled to a judgment as a matter of law.'" <u>Champion v. Artuz</u>, 76 F.3d 483, 486 (2d Cir. 1996) (quoting Fed. R. Civ. P. 56(c)). Accordingly, the Court will briefly review the claims below and, as a result, finds that summary judgment is proper.

Reed contends that the Defendants caused him severe emotional distress and pecuniary loss by:  (1) intentionally and/or negligently failing to provide him with a hearing in compliance with his due process rights, GML § 209-l, and the Department by-laws and (2) denying his FOIL request for the March 7, 2008 Minutes.  As a result, Reed asserts state law tort claims against all of the Defendants for negligent infliction of emotional distress and intentional infliction of emotional distress.  In addition, Reed asserts causes of action for libel and slander against all of the Defendants

based on Rivera's statement at the March 7, 2008 Hearing that Reed admitted his guilt, which is documented in the March 7, 2008 Minutes. The Defendants argue that all of the state law tort claims should be dismissed because Reed did not file a notice of claim. The Court agrees.

New York law "requires that a notice of claim be served within 90 days after a tort claim arises against a municipality". <u>Rowe v. NYCPD</u>, 85 A.D.3d 1001, 1002, 926 N.Y.S.2d 121, 1231 (2d Dep't 2011) (citing N.Y. Gen. Mun. Law § 50-e(1)(a)). "This doctrine applies with equal force to state law claims against municipal employees". <u>Cotz v. Mastroeni</u>, 476 F. Supp. 2d 332, 355 (S.D.N.Y. 2007) (citing N.Y. Gen. Mun. Law § 50-i(1)). However, while a notice of claim is required for all tort claims against a municipality or municipal employees in their official capacities, "[t]he notice prerequisite does not apply to claims asserted against municipal employees in their individual capacities that allege injuries resulting from intentional wrongdoing or recklessness". <u>Brenner v. Heavener</u>, 492 F. Supp. 2d 399, 405 (S.D.N.Y. 2007).

It is undisputed that the Plaintiff has never filed a notice of claim and therefore cannot sustain state law tort claims against the Department, the Board of Fire Commissioners, or Rivera and Pinto in their official capacities for misconduct associated with either the March 7, 2008 Hearing, the December 9, 2009 Hearing, or the alleged FOIL violations.

Furthermore, to the extent that Reed intended to assert the libel, slander, and intentional infliction of emotional distress claims against Rivera and Pinto in their individual capacities, those claims are time-barred by the one year statute of limitations in New York for intentional torts. <u>See</u> N.Y. C.P.L.R. §215(3); <u>Dinerman v. City of New York Admin. for Children's Servs.</u>, 50 A.D.3d 1087, 1088, 857 N.Y.S.2d 221 (2d Dep't 2008) (holding that the statute of limitations for intentional infliction of emotional distress is one year, pursuant to C.P.L.R. § 215). Reed alleges that both Rivera and Pinto caused him emotional distress by participating in the decision to

terminate him on March 7, 2008, that Rivera made the statement underlying his libel and slander claims at the March 7, 2008 Hearing, and that Pinto improperly denied his request for the March 7, 2008 Minutes in June 2008. This action was not commenced until February 19, 2010, more than a year after the statute of limitations expired. Accordingly, because Reed did not file a notice of claim, and any intentional tort claims against Rivera or Pinto in their individual capacities are time-barred, the Defendants motion for summary judgment dismissing the state law tort claims is granted.

Finally, in this regard, the Defendants move for summary judgment dismissing Lisa Reed's cause of action for loss of consortium. A loss of consortium claim is a derivative action that depends on the viability of the primary cause of action, in this case, the underlying injury to Michael Reed. See Jones v. United States, 408 F. Supp.2d 107, 126 (E.D.N.Y. 2006). Thus, because the Court is dismissing all of Michael Reed's state common law tort claims, the Court must also dismiss Lisa Reed's derivative claim for loss of consortium based on those torts. Furthermore, regardless of whether Michael Reed ultimately prevails on his Section 1983 claim, a loss of consortium claim is a derivative claim that is not viable under Section 1983. See Kreutzberg v. Cnty. of Suffolk, No. 04-CV-3835, 2006 WL 337035, at *4 (E.D.N.Y. Nov. 20, 2006) (dismissing a claim for loss of consortium premised on a Section 1983 claim and noting that although "the Second Circuit has not ruled on whether a claim for loss of consortium can be brought under Section 1983 . . . all four Second Circuit district courts and the Sixth Circuit have found that a loss of consortium claim is a derivative claim that is not cognizable under Section 1983"). Accordingly, the Court grants the Defendants motion for summary judgment dismissing Lisa Reed's loss of consortium claim in its entirety.

**C.  As to the FOIA and FOIL Claims**

The Plaintiff's allegations in the complaint with respect to the Defendants purported violations of FOIA and FOIL differ from the claims he asserts in opposition to the motion for summary judgment.  In the complaint, the Plaintiff asserted that the Defendants violated the federal FOIA and New York FOIL by failing to provide him with a copy of the March 7, 2008 Minutes.  To rectify this violation, the Plaintiff sought an order directing the Defendants to provide him with a copy of the March 7, 2008 Minutes and to pay his attorneys fees and other damages in association with the claim.  However, this was the nearly identical issue raised and relief requested in the Article 78 Petition that was the subject of Justice Farneti's decision in Reed I.  (Defs' Reply, Ex. W ¶¶ 14 & 15.)  Thus, the Defendants contend that the Plaintiff is barred by the doctrine of *res judicata* from rearguing an issue that was already presented and fully litigated before the state court. In opposition to the instant motion, the Plaintiff does not argue or point to any genuine issue of fact suggesting that this claim was not fully litigated and decided before the court in Reed I.

Regardless, the Court finds that the Plaintiff is barred from re-litigating the FOIL cause of action as it is stated in the complaint.  The record is clear that the Defendants provided the Plaintiff with the March 7, 2008 Minutes during the course of Reed I and that, as a result, Justice Farneti determined that Reed's FOIL claim was moot.  The order makes no reference to the Plaintiff's claim for attorneys' fees.  However, to the extent Justice Farneti denied the Plaintiff's request for attorneys' fees, or the Plaintiff believes he was entitled to damages associated with the claim, the Plaintiff waived his opportunity to seek this relief by failing to appeal from the order.  Accordingly, on the Plaintiff's FOIA and FOIL claim as stated in the complaint, there is nothing for this Court to resolve and the Defendants' are entitled to summary judgment dismissing those claims.

However, in opposition to the Defendants' motion for summary judgment, the Plaintiff asserted an entirely new claim based on the alleged FOIA and FOIL violations. In particular, the Plaintiff contends that neither the FOIA nor the FOIL statutes require an individual to be represented by an attorney in order to receive records. Therefore by requiring him to first obtain an attorney, the Plaintiff alleges that the Defendants violated the statutes and deprived him of his right to due process under Section 1983 by infringing on his ability to adequately defend himself. According to the Plaintiff, these violations ultimately deprived him of his membership in the Department and associated benefits exceeding the amount of $250,000. Although the Court does not need to address claims raised for the first time on a motion for summary judgment, the Court nevertheless finds that these new arguments are without merit.

As an initial matter, the Court notes that although the Plaintiff asserts violations of both FOIA and FOIL, the parties use the names and the statutes interchangeably. However, the Plaintiff does not allege that he ever requested the March 7, 2008 Minutes pursuant to the federal FOIA statute, nor for that matter could he have made such a request. The Board and the Department, to whom the Plaintiff made the request, are part of a state agency, and the Second Circuit has explicitly stated that the "it is beyond question that FOIA applies only to federal and not to state agencies." Grand Cent. P'ship, Inc. v. Cuomo, 166 F.3d 473, 484 (2d Cir. 1999); see, e.g., Washington v. Police Dep't of the City of N.Y., No. 93-CV-5962, 1994 WL 455512, at *1 (S.D.N.Y. Aug. 22, 1994) (refusing to apply FOIA to the NYC Police Department); Rankel v. Town of Greenburgh, 117 F.R.D. 50, 54 (S.D.N.Y. 1987) (refusing to apply FOIA to municipal corporations). Accordingly, the Court will only address whether a genuine issue of fact exists to preclude summary judgment on the Plaintiff's based on alleged violations of FOIL.

The Plaintiff contends that the Defendants' alleged violation of FOIL deprived him of his right to due process and triggered a cause of action under Section 1983. However, FOIL is a New York state law, and the Second Circuit has held that a plaintiff cannot maintain a cause of action under Section 1983 when the alleged deprivation of due process is based on the violation of state law. See Pollnow v. Glennon, 757 F.2d 496, 501 (2d Cir. 1985) ("[A] violation of state law is not cognizable under § 1983."). Indeed, it is well-settled in New York that "section 1983 is not a proper vehicle for bringing a FOIL claim." Papay v. Haselhuhn, No. 07-CV-3858, 2010 WL 4140430, at *8 (S.D.N.Y. Oct. 21, 2010); see also Old St. George's LLC v. Bianco, 389 F. App'x 33, 35 (2d Cir. 2010) ("[W]ith respect to appellants' claims relating to the alleged interference by officials of the Town of Yorktown with appellants' ability to access the Town's public records, we agree with the district court that the complaint alleges, at best, only a violation of New York's Freedom of Information Law, and not a federal constitutional claim."); Collins v. City of N.Y., No. 05-CV-5595, 2007 WL 2455142, at *5 (E.D.N.Y. Aug. 23, 2007) (holding that plaintiff's claim that defendants violated FOIL did not give rise to a federal claim under Section 1983).

Moreover, if a person is denied access to a record in response to a FOIL request, the remedy is to seek review pursuant to Article 78. Papay, 2010 WL 4140430 at *8 (citing N.Y.C.P.L.R. § 7801 et seq.; N.Y. Pub. Off. Law § 89(4)(b)); see also Mallet v. Johnson, 09 CIV. 8430, 2011 WL 2652570, at *4 (S.D.N.Y. July 7, 2011) (holding that a person may challenge the denial of a FOIL request "in a state-court action for judicial review under Article 78 of the CPLR.") (citing N.Y. Pub. Off. L. §89(4)(b)). Nevertheless, even assuming that the Defendants violated FOIL by requiring the Plaintiff to obtain an attorney in order to receive the records, no reasonable fact-finder could find that the Plaintiff was prejudiced in his ability to defend himself at the December 9, 2009 Hearing because it is undisputed that the Department provided the Plaintiff with the March 7, 2008 Minutes

during the course of <u>Reed I</u>, which was significantly prior to the December 9, 2009 Hearing. Thus, the Court grants the Defendants motion for summary judgment dismissing all of the Plaintiff's claims alleging violations of FOIA and FOIL.

**D.  As to the Section 1983 Claims Against Rivera and Pinto**

The Defendants have moved for summary judgment dismissing the Plaintiff's Section 1983 cause of action as against Rivera and Pinto.  As an initial matter, the Court notes that there is no indication that the Plaintiff intended to assert Section 1983 claims against Rivera and Pinto directly. Although the Plaintiff alleges that Rivera and Pinto were improperly involved in the decision to terminate him at the March 7, 2008 Hearing, he makes no such allegation in the complaint or in opposition to the instant motion with respect to the December 9, 2009 Hearing that provides the basis for his Section 1983 claim.

Furthermore, even assuming that there was something improper about Rivera and Pinto serving on the executive committee that terminated the Plaintiff at the March 7, 2008 Hearing, both Rivera and Pinto submitted affidavits stating that they were not on the executive committee that voted to terminate the plaintiff at the December 9, 2009 Hearing, and therefore could not have been directly involved in any due process violations.  Thus, even if the Plaintiff intended to assert the Section 1983 claims against Rivera and Pinto, he has not alleged their personal involvement nor raised an issue of fact as to their personal involvement that would preclude a finding of summary judgment.  <u>See, e.g.,</u><u>Wright v. Smith</u>, 21 F.3d 496, 501 (2d Cir. 1994) ("It is well settled in this Circuit that personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983.") (internal quotations omitted).

Accordingly, having granted the Defendants summary judgment on the state common law tort claims, and on the Section 1983 claims as against Rivera and Pinto, there are no remaining

claims in this litigation against Rivera and Pinto in their individual or official capacities and they are hereby dismissed from this case.

### E. As to Plaintiff's Section 1983 Claims

The Defendants have moved to dismiss Plaintiff's claim pursuant to Section 1983, which, in the complaint, is premised on alleged deprivations of his First Amendment, Eighth Amendment, and Fourteenth Amendment rights. Before addressing the merits of the Defendants' summary judgment motion, the Court deems it prudent to clarify the scope and relevant conduct underlying this cause of action.

As an initial matter, although the Section 1983 cause of action is only asserted against the Department in the complaint, most of the allegations in the complaint and the Plaintiff's opposition to the instant motion are directed to the Department and the Board of Fire Commissioners. Thus, for the purposes of this motion, the Court construes the Section 1983 cause of action as against the Department and the Board of Fire Commissioners (hereinafter "the Medford Defendants"). In addition, the Medford Defendants characterize the Section 1983 claim as only seeking damages based on the December 9, 2009 Hearing. In opposition to the summary judgment motion, the Plaintiff does not assert that he is also seeking damages for any constitutional deprivations associated with the March 7, 2008 Hearing, nor does he argue that he is entitled to such damages. Accordingly, the Court only addresses the propriety of the Section 1983 claim based on the Medford Defendants' conduct associated with the December 9, 2009 Hearing.

The thrust of the Plaintiff's Section 1983 claim is that the Medford Defendants violated his procedural due process rights under the Fourteenth Amendment by failing to provide him with a pre-deprivation hearing. The Medford Defendants assert that they are entitled to summary judgment on the Plaintiff's Section 1983 due process claim because his exclusive remedy for any challenges to the December 9, 2009 Hearing for due process purposes was an Article 78 proceeding.

Thus, the Medford Defendants argue that because the four month statute of limitations to bring an Article 78 proceeding has expired, the Plaintiff's claim is time-barred and must be dismissed.

In order to state a valid claim under 42 U.S.C. § 1983, a plaintiff must show that the conduct in question deprived him of a right, privilege, or immunity secured by the Constitution or the laws of the United States, and that the acts were attributable at least in part to a person acting under color of state law.  42 U.S.C. § 1983; Washington v. County of Rockland, 373 F.3d 310, 315 (2d Cir. 2004).  It is well-settled that Section 1983 itself "creates no substantive rights" but rather "provides only a procedure for redress for the deprivation of rights established elsewhere."  Sykes v. James, 13 F.3d 515, 519 (2d Cir. 1993) (citing City of Oklahoma City v. Tuttle, 471 U.S. 808, 816, 105 S. Ct. 2427, 2432, 85 L. Ed. 791 (1985)).

With respect to the underlying constitutional deprivations, although the Plaintiff asserts violations of his First and Eighth Amendment rights, the complaint and the record are void of any facts or evidence that would support either of these claims. In addition, the Court is not aware of any legal basis upon which the Plaintiff can contend his termination or the surrounding circumstances resulted in a violation of his First Amendment or Eighth Amendment rights. Accordingly, because the Court finds that the Plaintiff cannot state a claim pursuant to Section 1983 for violations of his First Amendment or Eighth Amendment rights, these claims are dismissed.

As to the Fourteenth Amendment claim, there is no dispute that the Plaintiff is asserting violations of his procedural due process in association with the December 9, 2009 Hearing. However, in opposition to the instant motion, the Plaintiff submitted an affidavit seemingly attempting to argue a deprivation of his rights under the Equal Protection clause or pursuant to 42 U.S.C. § 1981(a) based on his contention that he received a harsher punishment than other employees who engaged in misconduct.  In this regard, the Plaintiff does not support this claim with

any allegation that he was a member of a protected class, or with any evidence that would support a "class of one" claim. Accordingly, the Court will only address the Section 1983 cause of action in conjunction with the Fourteenth Amendment procedural due process claim.

Where a plaintiff alleges violations of procedural due process "the deprivation by state action of a constitutionally protected interest in 'life, liberty, or property' is not in itself unconstitutional; what is unconstitutional is the deprivation of such an interest *without due process of law*". Zinermon v. Burch, 494 U.S. 113, 125, 110 S. Ct. 975, 108 L. Ed. 2d 100 (1990) (emphasis in original). To determine whether the Plaintiff has a valid Section 1983 due process claim, the Court applies a two-step inquiry: (1) whether the Plaintiff possesses a liberty or property interest and, if so, (2) what process he is due before he can be deprived of that interest. See Ciambriello v. Cnty. of Nassau, 292 F.3d 307, 313 (2d Cir. 2002).

As to the first step in the analysis, the parties do not appear to dispute that the Plaintiff has a constitutionally protected interest in his continued employment as a volunteer firefighter. In fact, it is well-settled that in New York, "volunteer firefighters are considered public employees and must be afforded due process in disciplinary proceedings, which includes the right to a hearing held 'upon due notice and upon stated charges'". See Bigando v. Heitzman, 187 A.D. 2d 917, 918, 590 N.Y.S.2d 553, 554 (3d Dep't 1992) (citing N.Y, Gen. Mun. Law § 209-l); see also Greene v. Medford Fire Dep't., Inc., 6 A.D.3d 705, 706, 775 N.Y.S.2d 538, 539 (2d Dep't 2004) (holding that a volunteer firefighter dismissed from the Medford Fire Department "must be afforded due process in disciplinary proceedings" and that the Department had violated the plaintiffs due process rights by failing to provide the plaintiff with adequate notice to permit him to mount a defense). Because the Medford Defendants have not argued or submitted any evidence indicating the contrary, for the

purposes of this motion, the Court finds that the Plaintiff has a constitutionally protected property interest.

Having found a property interest, the Court proceeds to the second inquiry, that is, what process volunteer firefighters are entitled to under the Constitution before they can be terminated for cause. Here, the Medford Defendants contend that because a discharged public employee such as the plaintiff can contest the results of a disciplinary hearing in an Article 78 proceeding, this post-deprivation remedy satisfies constitutional due process. It is true that, as a general rule, there can be no procedural due process violation when the state "provides apparently adequate procedural remedies and the plaintiff has not availed himself of those remedies." New York State Nat. Org. for Women v. Pataki, 261 F.3d 156, 168 (2d Cir. 2001) (quoting Alvin v. Suzuki, 227 F.3d 107, 116 (3d Cir. 2000)). Moreover, it is also well-established that "an Article 78 proceeding is a perfectly adequate postdeprivation remedy" to challenge the results of a disciplinary proceeding. Hellenic Am. Neighborhood Action Comm. v. City of New York ("HANAC"), 101 F.3d 877, 881 (2d Cir. 1996).

However, the proposition that the availability of an Article 78 proceeding satisfies constitutional due process for all challenges to a pre-termination hearing is not supported by the law. The Medford Defendants reliance on Finley v. Giacobbe, 79 F.3d 1295 (2d Cir. 1996) to support this contention is misguided. In Finley, the Second Circuit held that a public employee who challenges his or her discharge on *breach of contract grounds* must do so by filing an Article 78 proceeding. Id. at 1292. By contrast, when addressing the plaintiff's Section 1983 due process cause of action, the court in Finley made no mention of Article 78. Rather, the court dismissed the Section 1983 due process claim because the plaintiff, an at-will public employee, had resigned and therefore could not "complain of procedural defects and omissions, because she resigned before her

employer took all the steps necessary to fire her". <u>Id.</u> at 1296. Thus, <u>Finley</u> has no application to the instant case, where the Plaintiff asserts a Section 1983 and not a breach of contract cause of action, and was terminated from a position in which he had a constitutionally protected interest.

Furthermore, the Medford Defendants also cite to the Supreme Court's decision in <u>Hudson v. Palmer</u>, 468 U.S. 517, 532, 104 S. Ct. 3194, 82 L.Ed.2d 393 (1984) for the proposition that an adequate post-deprivation remedy is a defense to a Section 1983 claim where the deprivation is random and unauthorized. However, the Medford Defendants do not put forth any arguments or evidence to support that their actions were random and unauthorized. This is relevant because, as the Second Circuit has noted, "in evaluating what process satisfies the Due Process Clause, 'the Supreme Court has distinguished between (a) claims based on established state procedures and (b) claims based on random, unauthorized acts by state employees.'" <u>Rivera-Powell v. New York City Bd. of Elections</u>, 470 F.3d 458, 465 (2d Cir. 2006) (quoting <u>HANAC</u>, 101 F.3d At 880, citing <u>Hudson</u>, 468 U.S. 517, 532, 104 S. Ct. 3194, 82 L.Ed.2d 393 (1984) and <u>Parratt v. Taylor</u>, 451 U.S. 527, 101 S. Ct. 1908, 68 L. Ed. 2d 420 (1981)).

Thus, consistent with <u>Hudson</u>, if the deprivation occurs at the hands of a government actor by way of a "random and unauthorized act," the constitutional protection of due process does not require a pre-deprivation hearing, and therefore no cause of action under Section 1983 exists, so long as there is an adequate post-deprivation procedure available to address the alleged violation. <u>See</u> <u>HANAC</u>, 101 F.3d at 880–82; <u>see also</u> <u>Zinermon v. Burch</u>, 494 U.S. 113, 132, 110 S. Ct. 975, 108 L.Ed.2d 100 (1990) (explaining that where the state is effectively "unable to anticipate and prevent a random deprivation of a liberty interest, post deprivation remedies might satisfy due process").

On the other hand, where the plaintiff alleges a deprivation pursuant to an established state procedure, "the state can predict when it will occur and is in the position to provide a pre-deprivation hearing." <u>Rivera-Powell</u>, 470 F.3d at 465. In such instances, "the availability of post-deprivation procedures will not, *ipso facto*, satisfy due process." <u>Id.</u> (internal quotation marks omitted). As the Second Circuit has noted, "[t]he distinction between random and unauthorized conduct and established state procedures . . . is not clear-cut". <u>Id.</u> However, as a general rule, conduct cannot be considered "random and unauthorized", regardless of whether the acts are contrary to state law if: (1) "the state delegated to those actors 'the power and authority to effect the very deprivation complained of . . . [and] the concomitant duty to initiate the procedural safeguards set up by state law'", <u>id.</u> (quoting <u>Zinermon</u>, 494 U.S. at 138, 110 S. Ct. 975) or (2) the deprivation resulted from "the acts of high-ranking officials who are 'ultimate decision-maker[s]' and have 'final authority over significant matters'", <u>id.</u> (quoting <u>Velez v. Levy</u>, 401 F.3d 75, 91–92 & nn. 14 & 15 (2d Cir. 2005).

Here, the Court finds that there is an issue of fact as to whether the conduct if the Medford Defendants was pursuant to an established state procedure. In <u>Rivera-Powell</u>, the Secord Circuit noted that, because the Board of Elections had been "delegated the authority to make the kind of deprivation at issue", namely the removal of candidates from the ballot, the alleged deprivation could be classified as pursuant to an established state procedure. <u>Id.</u> Similarly, in the instant case, the Medford Defendants were "delegated the authority to make the kind of deprivation at issue", namely the termination of the Plaintiff for cause. In particular, GML § 209-l grants to the Board of Fire Commissioners the power to make "regulations governing the removal of volunteer officers and volunteer members . . . charged with incompetency or misconduct". N.Y. Gen. Mun. Law § 209-l (1) and (4)(a). Moreover, to the extent the Board of Fire Commissioners delegated this

responsibility in whole or in part to the Department, this is considered a "grant of concurrent authority". See Acker v. Bd. of Fire Comm'rs, Kings Park Fire Dist., 25 A.D.2d 282, 284, 269 N.Y.S.2d 628, 630 (2d Dep't 1966). The Medford Defendants admit as much, stating that "[t]he decision to terminate the plaintiff was within the [Department's] power". (Br. at 10.)

In addition, the fact that the Plaintiff contends that the Medford Defendants actions violated the municipal law and Department by-laws does not require a finding that the Medford Defendants conduct was "random and unauthorized." As the Second Circuit noted in Burtnieks v. City of New York, "[d]ecisions made by officials with final authority over significant matters, which contravene the requirements of a written municipal code, can constitute established state procedure." 716 F.2d 982, 988 (2d Cir. 1983). Thus, because the Court cannot say that the alleged deprivations were "random and unauthorized", the availability of an Article 78 remedy does not automatically satisfy due process and preclude a section 1983 claim. Accordingly, the Court must now look to what type of process was due.

"The essential requirements of due process . . . are notice and an opportunity to respond." Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532, 546, 105 S. Ct. 1487, 1495, 84 L. Ed. 2d 494 (1985). The law is clear that where, as here, the plaintiff is a public employee with a constitutionally protected property interest in his employment, "procedural due process is satisfied if the government provides notice and a limited opportunity to be heard *prior* to termination, so long as a full adversarial hearing is provided afterwards." Locurto v. Safir, 264 F.3d 154, 171 (2d Cir. 2001) (citing Loudermill, 470 U.S. at 543, 105 S. Ct. 1487.) (emphasis added). "The pretermination process 'need not be elaborate' or approach the level of a 'full adversarial evidentiary hearing,' but due process does require that before being terminated such an 'employee [be given] oral or written notice of the charges against him, an explanation of the employer's evidence, and an opportunity to

present his side of the story'". Otero v. Bridgeport Housing Auth., 297 F.3d 142, 151 (2d Cir. 2002) (quoting Loudermill, 470 U.S. at 545, 546, 105 S. Ct. 1487) (some alterations omitted). Indeed, where an adequate post-deprivation procedure is available, "the requisite [pretermination] hearing is a minimal one [that] does not purport to resolve the propriety of the discharge, but serves mainly as a check against a mistake being made by ensuring there are reasonable grounds to find the charges against an employee are true and would support his termination." Locurto, 264 F.3d at 173–74 (2d Cir. 2001) (citing Loudermill, 470 U.S. at 545–46, 105 S. Ct. 1487).

New York provides a dismissed municipal employee with the opportunity to bring an Article 78 proceeding to challenge "whether a determination was made in violation of lawful procedure, was affected by an error of law or was arbitrary and capricious or an abuse of discretion, including abuse of discretion as to the measure or mode of penalty or discipline imposed". See N.Y. C.P.L.R. §7803 (4) (McKinney 2011). Moreover, GML §209-l itself guarantees "the right to such officer or member to a review pursuant to article seventy-eight of the civil practice law and rules" following an inadequate notice and hearing process. N.Y. Gen. Mun. Law §209-l. As previously stated, the opportunity to pursue an Article 78 proceeding in New York State court constitutes a constitutionally sufficient post-deprivation remedy. Harris v. Mills, 572 F.3d 66, 76 (2d Cir. 2009).

The Plaintiff does not challenge the adequacy of the post-deprivation procedure available, but rather asserts that an Article 78 proceeding does not satisfy due process because he was constitutionally entitled to, and denied, a pre-termination hearing. In particular, the Plaintiff alleges that the December 9, 2009 Hearing cannot properly be classified as a pre-termination "hearing" for due process purposes because the Medford Defendants: (1) failed to provide constitutionally adequate notice; (2) failed to provide notice in compliance with GML § 209-l and the Department by-laws; (3) found him guilty and terminated him in part based on his absence; and (4) terminated

him in a decision that was arbitrary, an abuse of discretion, and disproportionate to the alleged misconduct. As set forth below, the Court finds that only the first of these allegations—failing to provide constitutionally adequate notice—can sustain a Section 1983 claim. Thus, the Court addresses separately the challenge to the constitutionally adequate notice and the remaining challenges to the procedure and outcome of the December 9, 2009 hearing.

### 1. Constitutionally Adequate Notice

The Plaintiff's contention that he did not receive constitutionally adequate notice of the December 9, 2009 Hearing, if true, would render the pre-termination hearing void. In this regard, "[t]he availability of a post-termination hearing under Article 78, when there was no pre-termination hearing, does not satisfy due process because it violates <u>Loudermill's</u> requirement than employee have minimum due process before being terminated." <u>Todaro v. Norat</u>, 112 F.3d 598 (2d Cir. 1997); <u>Leonardi v. Bd. of Fire Comm'rs of Mastic Beach Fire Dist.</u>, 643 F. Supp. 610, 613 (E.D.N.Y. 1986) (holding that the Board of Fire Commissioner's of Mastic Beach Fire District's failure to provide the plaintiff, a volunteer firefighter, with a pre-termination hearing prior to his termination "constituted a deprivation of a property interest without the due process of law guaranteed by the Fourteenth Amendment"); <u>see</u> <u>also</u> <u>Schultz v. Baumgart</u>, 738 F.2d 231 (7th Cir. 1984) ("Schultz was entitled to notice and a meaningful opportunity to respond before he was terminated. If he was terminated without those protections, the constitutional deprivation was then complete. Schultz need not have exhausted other state remedies before bringing his section 1983 claim.") (citing <u>Patsy v. Board of Regents</u>, 457 U.S. 496, 516, 102 S. Ct. 2557, 2568, 73 L. Ed. 2d 172 (1982)); <u>Fishman v. Daines</u>, 743 F. Supp. 2d 127 (E.D.N.Y. 2010) (denying a motion to dismiss where plaintiffs, Medicaid applicants, had a constitutional and statutory right to a pre-deprivation

hearing before the revocation of their benefits on the grounds of abandonment, and therefore the court could not conclude that that an Article 78 hearing was constitutionally adequate).

Nevertheless, the Medford Defendants assert that, even if the Plaintiff was not given constitutionally adequate notice of the December 9, 2009 hearing, New York courts "have the jurisdiction to review the issue of whether there was proper notice in the disciplinary hearing". (Br. at 13.) However, the fact that a party can raise a constitutional due process claim in an Article 78 proceeding does not preclude a party from asserting a Section 1983 cause of action in federal court. In fact, the Second Circuit has explicitly held that a plaintiff is not barred from bringing a Section 1983 claim "even where . . . it is based upon the same cause of action as the Article 78 proceeding", if the plaintiff is seeking damages that were unavailable in the Article 78 court. Davidson v. Capuano, 792 F.2d 275, 282 (2d Cir. 1986); see also Vargas v. City of New York, 377 F.3d 200, 205 (2d Cir. 2004) ("New York's claim preclusion rule does not apply because a state court entertaining an Article 78 proceeding does not have the power to award the full measure of relief available in subsequent section 1983 litigation.").

Thus, to the extent the Plaintiff's Section 1983 claim is premised on a deprivation of constitutionally adequate notice, the fact that he chose not commence an Article 78 proceeding does not warrant the dismissal of his Section 1983 cause of action. Accordingly, in order to prevail on this motion for summary judgment, the Medford Defendants had the burden to show that the Plaintiff received constitutionally adequate notice. However, because the Medford Defendants presumed that the availability of an Article 78 proceeding barred all of the Plaintiff's Section 1983 claims, they did not argue or put forth evidence directly addressing whether the Plaintiff received constitutionally adequate notice. Therefore, as set forth below, the Court finds that there are issues of fact precluding summary judgment.

Receiving notice is integral to a party's due process rights under the constitution because the "right to be heard has little reality or worth unless one is informed that the matter is pending and can choose for himself whether to appear or default, acquiesce or contest". Mullane v. Central Hanover Bank & Trust Co., 339 U.S. 306, 314, 70 S. Ct. 652, 657, 94 L. Ed. 865 (1950). Although due process does not require actual notice before the government may extinguish a person's property interest, "due process requires the government to provide 'notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.'" Jones v. Flowers, 547 U.S. 220, 226, 126 S. Ct. 1708, 164 L. Ed. 2d 415 (2006) (quoting Mullane, 339 U.S. at 314, 70 S. Ct. 652). "Personal service of written notice within the jurisdiction is the classic form of notice always adequate in any type of proceeding." Mullane, 339 U.S. at 313, 70 S. Ct. 652. Furthermore, "under most circumstances, notice sent by ordinary mail is deemed reasonably calculated to inform interested parties that their property rights are in jeopardy." Weigner v. City of New York, 852 F.2d 646, 650 (2d Cir. 1988).

Nevertheless, personal service or service on a party by mail are not the only forms of constitutionally sufficient notice. Rather, the inquiry is case-specific, and "in making the initial determination of what notice is reasonable, the likelihood that a party will learn of the proceedings without notice from the state and his ability to protect himself are relevant circumstances." Weigner, 852 F.2d at 651 n.5; Orix Fin. Servs. v. Phipps, No. 91-CV-2523, 2009 WL 30263, at *9 (S.D.N.Y. Jan. 6, 2009) ("[T]he relevant inquiry for due process purposes focuses on the party providing the notice, and asks whether that party has provided "notice reasonably calculated" to inform interested parties."). Thus, in some cases, courts have held that "sending notice to an attorney who represents a defendant . . . may satisfy due process". Espinal v. United States, No. 06-CV-2470, 2007 WL 4409789, at *3 (E.D.N.Y. Dec. 17, 2007). Of note, in cases where service on

an attorney was sufficient to satisfy due process, the defendant had unsuccessfully attempted to serve the plaintiff directly, and service was on an attorney who was representing the plaintiff in a "then-pending related . . . proceeding". Bye v. United States, 105 F.3d 856, 857 (2d Cir.1997) (holding that notice was "reasonably calculated" in the circumstances and due process was satisfied when the government sent a notice of an administrative forfeiture proceeding to the attorney representing the plaintiff in his "then pending criminal proceeding" after the defendants attempts at personal service had failed); Espinal, 2007 WL 4409789, at * 3 (same); see also Orix Financial Servs., 2009 WL 30263, at * 11 n. 4 ("Due process was further satisfied because the totality record evinces that Defendant had retained a lawyer, and that her lawyer had communicated with her concerning this case.").

However, regardless of whether notice was reasonably calculated to reach a party "[i]f a party receives actual notice that apprises it of the pendency of the action and affords an opportunity to respond, the due process clause is not offended." Baker v. Latham Sparrowbush Assocs., 72 F.3d 246, 254 (2d Cir. 1995). Accordingly, "[a]ctual notice is an affirmative defense to a procedural due process claim" which the defendants must prove. Brody v. Vill. of Port Chester, 509 F. Supp. 2d 269, 279 (S.D.N.Y.2007). Notably, "'actual notice' must be equivalent to constitutionally sufficient notice for due process to be satisfied." Brody v. Vill. of Port Chester, No. 00-CV-7481, 2007 WL 735022 (S.D.N.Y. March 12, 2007).

Here, the only arguments submitted by either party on the constitutional issue are legal conclusions that service was or was not constitutionally sufficient. Based on the Court's review of the record, there are a number of issues of fact precluding summary judgment. With regard to whether notice was "reasonably calculated" to reach the Plaintiff, the only undisputed facts are that the Plaintiff was not personally served and that Stroble, the attorney who represented the Plaintiff in

association with his FOIL request and Reed I, was served via certified and regular mail. The fact that Stroble had represented the Plaintiff in Reed I does not in and of itself support a finding that notice was "reasonably calculated" to reach the Plaintiff, because Reed I was no longer a "then-pending" proceeding. Absent from the record is any indication as to whether: (1) notice was mailed to the Plaintiff directly or (2) the Medford Defendants confirmed or the Plaintiff had given them reason to believe that Stroble was authorized to accept service on the Plaintiff's behalf for the purposes of the December 9, 2009 Hearing. Stroble himself states that he did not know whether he was still representing the Plaintiff upon the conclusion of Reed I, and therefore this does not appear to be one of the situations where service through an attorney satisfies due process. However, because the Plaintiff did not move for summary judgment, and neither party directly addressed this issue, the Court does not know enough about the surrounding circumstances to conclusively find that service was not reasonably calculated to apprise the Plaintiff of the December 9, 2009 Hearing.

There are also significant questions of fact as to whether the Medford Defendants have a viable defense based on actual notice. Stroble states in his affidavit in opposition to the instant motion that he did not inform the Plaintiff of the December 9, 2009 Hearing "until after the December 9, 2009 meeting". (Stroble Aff. ¶ 8.) The only evidence in the record supporting the contention that the Plaintiff had actual notice relates to a voicemail that the Department's counsel received from Stroble before the hearing stating that he did not have the authority to consent to an independent hearing officer presiding over the hearing. The Medford Defendants characterize this voicemail as an indication that Stroble had discussed the matter with the Plaintiff and therefore the Plaintiff had actual notice. By contrast, Stroble states that his voicemail was meant to convey that he did not represent the Plaintiff with respect to the December 9, 2009 Hearing and therefore did not have any authority to consent to an independent hearing officer. Even accepting the Medford

Defendants interpretation of Stroble's voicemail, at most it would attribute actual knowledge to the Plaintiff of the pending proceeding. Actual knowledge would only satisfy the actual notice requirement to satisfy due process if the Plaintiff was informed of the charges against him within a reasonable amount of time to allow him to prepare a defense. Ultimately, there is no way for the Court to determine based solely on this record whether the Plaintiff had actual notice of the December 9, 2009 Hearing. Thus, because a reasonable fact-finder could find that basic notice requirements of due process were not met with regard to the disciplinary charges against the Plaintiff, there is a genuine issue of fact precluding summary judgment as to the Section 1983 cause of action based on a failure to provide constitutionally adequate notice.

   2.   **Claims Regarding the Procedure and Outcome of the December 2009 Hearing**

As to the remaining conduct that the Plaintiff contends violated his right to due process, the Court agrees with the Medford Defendants that the availability of a post-deprivation remedy satisfied due process and therefore cannot support a Section 1983 claim.

With respect to the Medford Defendants alleged failure to serve the Plaintiff in accordance with the municipal law or the Department's by-laws, a lack of compliance with the state or agency's regulations and procedures is a matter properly raised in an Article 78 proceeding, and does not implicate constitutional due process requirements for the purposes of a Section 1983 claim. See McDarby v. Dinkins, 907 F.2d 1334, 1337–38 (2d Cir.1990) ("When the minimal due process requirements of notice and  hearing have been met, a claim that an agency's policies or regulations have not been adhered to does not sustain an action for redress of procedural due process violations.").

The plaintiff further challenges the Medford Defendant's "policy" of terminating employees without a hearing based on a provision in the Department's by-laws allowing members to find a

member guilty based solely on their absence from the hearing. The Plaintiff is referring to Article IV, Section VI of the by-laws, which states:

> Any member facing charges shall be notified of the charges in writing at least 15 calendar days before such trial. If the accused willfully neglects or refuses to stand trial, he shall be deemed guilty.

(Rodriguez Aff., Ex. J at 7.) According to the Plaintiff, this policy directly contradicts the constitutional requirement that a member be afforded a pre-deprivation hearing, and therefore, even if a charged member is absent, a hearing should proceed *in abstensia*. However, as long as the charged employee received notice and an opportunity to respond, a post-deprivation proceeding where an employee can challenge whether additional procedures were required at the actual hearing satisfies due process requirements. See Campo v. New York City Employees' Ret. Sys., 843 F.2d 96, 102 (2d Cir. 1988) ("Plaintiffs cannot manufacture a § 1983 claim by pointing to the allegedly defective meeting while ignoring that part of the regulatory process that serves to redress administrative error.").

Similarly, whether the Plaintiff's termination was arbitrary, an abuse of discretion or disproportionate to the charge—including whether his non-appearance at the hearing inappropriately factored into the decision to terminate his employment—are issues that speak to the merits of the Medford Defendant's decision. It is not the role of this Court to determine whether the decision to terminate the Plaintiff for his alleged misconduct was correct or supported by sufficient evidence. As long as the Medford Defendants complied with the minimal due process requirements for a pre-termination hearing, the Article 78 proceeding is a "wholly adequate post-deprivation remedy". See Locurto, 264 F.3d at 173–75 (holding that, where terminated firefighters alleged that the administrative procedures leading to their termination were biased and contrary to law, due process was satisfied by a "minimal" hearing followed by a "wholly adequate post-deprivation" Article 78 hearing); McLaurin v. New Rochelle Police Officers, 363 F. Supp. 2d 574, 578

(S.D.N.Y. 2005) ("The State of New York provides a dismissed municipal employee the opportunity to challenge his termination as arbitrary and capricious pursuant to CPLR Article 78. Availability of Article 78 proceedings under New York law bars a municipal employee from maintaining a §1983 procedural due process claim.").

If the Plaintiff prevails on his Section 1983 claim, the remaining challenges to the procedure and outcome of the December 9, 2009 Hearing would be rendered moot as independent causes of action. On the other hand, if the Plaintiff does not prevail on his section 1983 claim, the remaining claims are only subject to challenge in an Article 78 proceeding. In the event he cannot sustain a Section 1983 cause of action, the Plaintiff requests that this Court perform the Article 78 review. The Medford Defendants contend that this Court lacks jurisdiction to perform an Article 78 review. The Court agrees.

Because an Article 78 claim is based on state law and there is no diversity between the parties, it could only be brought into this Court permissively through supplemental jurisdiction. 28 U.S.C. §1367(a). However, "it is doubtful . . . that claims under Article 78 are even amenable to a federal district court's supplemental jurisdiction." Morningside Supermarket Corp. v. N.Y. State Dep't of Health, 432 F. Supp. 2d 334, 346 (S.D.N.Y. 2006). "The overwhelming majority of district courts confronted with the question of whether to exercise supplemental jurisdiction over Article 78 claims have found that they are without power to do so or have declined to do so." Coastal Commc'ns Serv., Inc. v. City of New York, 658 F. Supp. 2d 425, 459 (E.D.N.Y. 2009); see also Morningside, 432 F. Supp. 2d at 346—48 (denying supplemental jurisdiction and declining to "deviat[e] from the well-reasoned and essentially unanimous position of New York district courts on. . . .[this] issue."); Blatch v. Hernandez, 360 F. Supp. 2d 595, 637 (S.D.N.Y. 2005) (dismissing an Article 78 claim for lack of subject matter jurisdiction, "as New York State has not empowered

the federal courts to consider such claims.").

Although it is unclear whether district courts can exercise supplemental jurisdiction over Article 78 claims, such a determination is not required here because, as previously stated, the additional challenges to the procedures and resulting decision at the December 9, 2009 Hearing are only relevant if the Court finds that the Plaintiff does not have a valid federal claim. See 28 U.S.C. §1367(c) ("The district courts may decline to exercise supplemental jurisdiction over a claim…if (3) the district court has dismissed all claims over which it has original jurisdiction."). Thus, if the Court dismisses the Plaintiff's Section 1983 claim, there will be no federal cause of action upon which the Court could exercise supplemental jurisdiction. Accordingly, the Court denies the Plaintiff's request to extend supplemental jurisdiction over the remaining due process claims.

However, the Court takes no position on whether these claims would be time-barred in the event the Plaintiff attempts to raise them in state court. See N.Y. C.P.L.R. § 205(a) ("If an action is timely commenced and is terminated in any other manner than by a voluntary discontinuance, a failure to obtain personal jurisdiction over the defendant, a dismissal of the complaint for neglect to prosecute the action, or a final judgment upon the merits, the plaintiff. . . .may commence a new action upon the same transaction or occurrence or series of transactions or occurrences within six months after the termination provided that the new action would have been timely commenced at the time of commencement of the prior action. . . ."); see also Hakala v. Deutsche Bank AG, 343 F.3d 111, 115 (2d Cir. 2003) ("The purpose of § 205(a) is to avert unintended and capricious unfairness by providing that if the first complaint was timely but was dismissed for curable reasons, the suit may be reinstituted within six months of the dismissal."); Goldstein v. New York State Urban Dev. Corp., 13 N.Y.3d 511, 520, 921 N.E.2d 164, 168 (2009) (holding that a state court may

toll the statute of limitations and allow the refiling of a state Article 78 proceeding where the federal cause of action was dismissed on curable grounds).

## III.  CONCLUSION

For the foregoing reasons it is hereby:

**ORDERED**, that the Defendants motion for summary judgment dismissing Michael Reed's state law claims for:  (1) intentional infliction of emotional distress; (2) negligent infliction of emotional distress; and (3) libel and slander is GRANTED, and it is further

**ORDERED**, the Defendants' motion for summary judgment dismissing Lisa Reed's state law claim for loss of consortium is GRANTED, and it is further

**ORDERED**, that the Defendants' motion for summary judgment dismissing the Section 1983 claims against defendants Franklin Rivera and Henry Pinto and dismissing them from the case is GRANTED, and it is further

**ORDERED**, that the Defendants' motion for summary judgment dismissing the Plaintiff's Section 1983 claims on the grounds that the Medford Defendants:  (1) failed to provide notice in compliance with GML § 209-l and the Department by-laws; (2) found the Plaintiff guilty and terminated him in part based on his absence; and (3) terminated him in a decision that was arbitrary, an abuse of discretion, and disproportionate to the alleged misconduct is GRANTED, and it is further

**ORDERED**, that the Defendants' motion for summary judgment dismissing Plaintiff's Section 1983 claim against the Medford  Defendants on the grounds that they terminated the Plaintiff without constitutionally adequate notice of the December 9, 2009 Hearing is DENIED, and it is further

**ORDERED**, that the Plaintiff's Section 1983 claims asserting deprivations of his rights under the First Amendment and Eighth Amendment are dismissed, and it is further

**ORDERED** that the parties are directed to appear for a pre-trial conference before this Court on Tuesday, September 13, 2011 at 9:00am, and it is further

**ORDERED**, that the Clerk of the Court is directed to amend the caption for the case as follows:

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
--------------------------------------------------------X
MICHAEL P. REED,

        Plaintiff,

     -against-

MEDFORD FIRE DEPARTMENT, INC.,
BOARD OF FIRE COMISSIONERS OF
THE MEDFORD FIRE DISTRICT,
MEDFORD, NEW YORK, JOHN DOE1,
JOHN DOE2, JOHN DOE3 and JANE DOE,
        Defendants.
--------------------------------------------------------X

**SO ORDERED.**
Dated: Central Islip, New York
     August 10, 2011


                   ___*/s/ Arthur D. Spatt*_____
                    ARTHUR D. SPATT
             United States District Judge